# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALEXANDER WAHPOE,** *individually and on behalf of all others similarly situated* | CIVIL ACTION |
| Plaintiff, | No. 19-1268 |
| v. | |
| **STAFFMORE LLC,** *et al.* | |
| Defendants. | |

**Goldberg, J.** September 16, 2020

## MEMORANDUM OPINION

In this putative collective and class action, Plaintiff alleged that his employer misclassified him and other similarly situated individuals[1] as independent contractors, resulting in the non-payment of overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), Pennsylvania Minimum Wage Act ("PMWA"), and Pennsylvania Wage Payment and Collection Law ("WPCL"). Plaintiff also raised claims for unpaid wages and retaliation. The parties have reached a settlement of Plaintiff's individual claims and move for my approval.

### I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant Staffmore, LLC is a staffing agency that provides "Therapeutic Staff Support" ("TSS") workers in the behavioral health field to Defendant Community Council Health

---

[1] Plaintiff originally sought to certify a collective under Section 216(b) of the FLSA. However, Plaintiff has not moved for conditional certification under the FLSA nor under Federal Rule of Civil Procedure 23.

[2] The following facts are taken from the Complaint, Defendants' Answers, the Memorandum of Law filed in connection with the present motion, the exhibits and declaration attached thereto, and the parties' joint stipulation.

Systems, Inc. ("CCHS"), which is a mental health and substance abuse services provider. Plaintiff claims that Staffmore and CCHS (collectively, "Defendants") are a "joint, single, and/or integrated employer with respect to the individuals Defendant Staffmore places with Defendant CCHS in the position of [TSS]." (Compl. ¶ 13, ECF No. 1.) Plaintiff alleges both Defendants employed him as a TSS.

On March 25, 2019, Plaintiff initiated this suit, which essentially asserts that despite having the same employment duties and conditions as others employed by the Defendants, he was classified as an independent contractor and, thus, did not receive overtime compensation. Plaintiff claims that he and Defendants entered into a contract, whereby Plaintiff agreed to provide TSS services in exchange for payment of $24 per hour, but that he has not received compensation for approximately 387 hours that he worked between April 1, 2017 and June 22, 2017.

On July 8, 2019, CCHS filed an Answer to the Complaint denying Plaintiff's allegations and asserting numerous defenses. CCHS also filed a cross-claim against Staffmore for contribution, indemnification, and breach of contract. On September 18, 2019, CCHS filed an amended cross-claim against Staffmore, which Staffmore answered on October 2, 2019 along with numerous defenses.

Thereafter, the parties undertook discovery and were able to reach an agreement to resolve Plaintiff's individual claims.

## II. **THE PROPOSED SETTLEMENT AGREEMENT**

To settle their claims, Defendants agreed to pay Plaintiff $45,000, which includes all costs and attorneys' fees. (Settlement Agreement ¶ 1, ECF No. 40–2.) Staffmore will pay $17,500 for claimed liquidated, compensatory, and/or punitive damages. (Stip. to Amend

Settlement Agreement ¶ 2, ECF No. 41.)  CCHS will pay $11,340 for claimed liquidated, compensatory, and/or punitive damages to Plaintiff and $16,160 to Murphy Law Group for attorneys' fees.  (Settlement Agreement ¶ 1(a)(iii).)

In exchange, Plaintiff agreed to the dismissal of this lawsuit with prejudice and release of the following claims:

> [Plaintiff] agrees that he shall irrevocably and unconditionally release, acquit and forever discharge Defendants and their owners, employees, parents, subsidiaries, members, managers, officers, directors, insurers, and attorneys with respect to all claims, known and unknown to him, with the exception of Defendants' obligations to [Plaintiff] under this Agreement, including any wage and hour claims under state or federal law relating to his employment by or provision of services to Defendants including, without limitation, the failure to pay wages, back wages, overtime, minimum wages, interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under federal, state or local wage and hour laws, including, but not limited to the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law. [Plaintiff] agrees that he shall irrevocably and unconditionally release, acquit and forever discharge Defendants with respect to any claims under state or federal law relating to any matter of employment or the provision of services with, to or for Defendants, including any form of compensation or relief permitted under any federal, state or local laws, including, the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1991, or the Pennsylvania Human Relations Act, during the time that [Plaintiff] was employed by or otherwise performed services for Defendants, and will not commence or prosecute, either in concert or individually, any action or proceeding, whether legal, judicial or quasi-judicial, on behalf of himself or any other person or entity, asserting claims, against Defendants. This release and waiver does not apply to [Plaintiff]'s right to enforce this Agreement.

(Settlement Agreement ¶ 3(a).)

### III.   LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013)).   If

employers violate the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207, respectively, employers may be liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Id. (citing 29 U.S.C. § 216(b)).

Courts have identified two procedures for settling FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012); see also Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015).

In approving a settlement under 29 U.S.C. § 216(b), a court must determine that "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Brumley, 2012 WL 1019337, at *2 (citation omitted). Courts generally break this analysis down into three elements: (1) whether the settlement resolves a bona fide dispute; (2) whether the terms of the agreement are fair and reasonable to the employee; and (3) whether the terms of the settlement otherwise frustrate the implementation of the FLSA. See, e.g., Clarke v. Flik Int'l Corp., No. 17-1915, 2020 WL 747067, at *2–3 (D.N.J. Feb. 14, 2020).

### IV. DISCUSSION

#### A. Bona Fide Dispute

The first step in this analysis is whether the settlement agreement resolves a bona fide dispute. A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's

4

overreaching." In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citation omitted). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." Kauffman v. U-Haul Int'l, Inc., No. 16-4580, 2019 WL 1785453, at *2 (E.D. Pa. April 24, 2019). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016). "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." Id.

The dispute in this case concerns: (1) whether Defendants misclassified Plaintiff as an independent contractor; (2) whether Defendants were "employers" within the meaning of the FLSA; (3) the amount of overtime hours worked by Plaintiff; (4) whether any unlawful actions by Defendants were "willful" in nature, thus invoking a three-year statute of limitations under the FLSA, and; (5) whether Plaintiff is entitled to liquidated damages. (Compl. ¶¶ 13–14, 48–49, 51, 80.) In response, Defendants denied all liability and raised several defenses that could limit Plaintiff's recovery even if they did violate the FLSA. Defendants insisted that any violations were not willful, which would limit Plaintiffs to a two-year recovery period, see 29 U.S.C. § 255(a), and represented that they acted in good faith, which they claim would preclude an award of liquidated damages. (CCHS Affirmative Defenses ¶¶ 29, 31, ECF No. 14; Staffmore Affirmative Defenses ¶¶ 9, 36, ECF No. 24.) For these reasons, I find that the settlement resolves a bona fide dispute between the parties.

### B. Fair and Reasonable Compensation Terms

Next, I must consider whether the compensation terms of the settlement agreement are fair and reasonable. Courts in the United States Court of Appeals for the Third Circuit routinely apply the nine-factor test in Girsh v. Jepson to assess whether a proposed FLSA collective or state law class action settlement agreement meets these criteria.[3] See, e.g., Lyons v. Gerhard's Inc., No. 14-6693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015); Brumley, 2012 WL 1019337, at *4–5. In the absence of guidance from the Third Circuit, district courts have also used the Girsh factors to assess whether a private FLSA settlement is fair and reasonable. See, e.g., Lyons, 2015 WL 4378514, at *3 n.1, *4; Bettger, 2015 WL 279754, at *7. But at least some of the Girsh factors appear to be of little help, if not irrelevant, in the individual-plaintiff context. See Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 523 n.3 (E.D. Pa. Jan. 11, 2016). Thus, "[e]ven though Girsh may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying Girsh simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable." Id. The parties in this case seek to settle Plaintiff's individual claims, not a collective or class action. As such, I look to Girsh and its factors generally for guidance.

Here, counsel clearly conducted a thorough investigation of Plaintiff's claims by undergoing discovery, exchange and reviewing the relevant documentation, and meeting to discuss settlement. This settlement agreement entitles Plaintiff to one hundred percent of his

---

[3] Girsh examines the following factors: "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ." 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks omitted).

unpaid overtime compensation, thirty-seven percent in liquidated damages, and attorneys' fees and costs. (Memo of Law at 5, ECF 40–1.) By reaching a settlement at this time, the parties avoid the costs of trial, which can be both time-consuming and expensive. Based on these reasons, I find that the compensation terms of the settlement agreement are fair and reasonable.

### C. Fair and Reasonable Attorneys' Fee Award

I have also reviewed the requested attorneys' fee award for its reasonableness. Section 216(b) requires a court to allow, "in addition to any judgment awarded to the plaintiff or plaintiffs, . . . a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Judicial review is required in this context "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Brumley, 2012 WL 1019337 at *9 (citations omitted).

Courts within the Third Circuit generally apply the "percentage-of-recovery" method when assessing the reasonableness of attorneys' fees. See, e.g., Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). "In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20–45%." Id. at *4 (collecting cases). Plaintiff's counsel's request for $13,923[4] in attorneys' fees falls within that range, accounting for approximately thirty-six percent of the total recovery.

Setting aside this work performed, the reasonableness of counsel's requested fee is confirmed by considering the award that would have been permitted when applying the "lodestar" method. The Third Circuit recommends that "district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." See, e.g., In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006). The lodestar formula "requires multiplying the number

---

[4] This total does not include $410 in counsel's out-of-pocket costs and expenses. (Murphy Decl. ¶ 12, ECF No. 40-2, Ex. B.)

7

of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). To determine the lodestar crosscheck, the requested fee award is divided by the lodestar calculation. In re AT&T, 455 F.3d at 164.

Here, the lodestar calculation is $13,923.80. (Memo of Law at 6, ECF No. 40–1.) Dividing the requested attorneys' fees ($16,160) by the lodestar calculation ($13,923.80) yields a lodestar check of approximately 1.16. This multiplier confirms that the requested attorneys' fees are reasonable because the Third Circuit has determined that lodestar multipliers between one and four are acceptable. See, e.g., Esslinger v. HSBC Bank Nevada, N.A., No. 10-3213, 2012 WL 5866074, at *16 (E.D. Pa. Nov. 12, 2020); see also Martinez v. IFA Grp., Inc., No. 19-02247, 2019 WL 6133860, at *3 (E.D. Pa. Nov. 19, 2019). Accordingly, the settlement is clearly fair and reasonable to the Plaintiff.

### D. The Settlement Agreement Frustrates the Purpose of the FLSA

Finally, I turn to whether approval of the settlement agreement will frustrate the purpose of the FLSA. "The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process" require district courts to scrutinize FLSA settlements for "the existence of side deals or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA." Brumley, 2012 WL 1019337, at *2 (internal citations omitted). "In practice, leaving an FLSA settlement to wholly private resolution conduces inevitably to mischief. An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount—an amount less than the full amount owed under the FLSA (plus, with savvy

negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA)." Id. at *2.

The settlement agreement at issue here contains two such "side deals"—a confidentiality clause and release provision. I address each of these provisions in turn.

### 1. The Confidentiality Clause

In relevant part, the "Limited Confidentiality/No Material Default" clause states:

> Defendants and [Plaintiff] understand and agree that this Agreement and its terms shall be CONFIDENTIAL by and among the Parties. In response to any inquiries regarding this Lawsuit, the Parties agree to simply state, "The matter has been resolved," and to refrain from further comment. However, this limited confidentiality requirement shall not prohibit the Parties from disclosing the existence or terms of this Agreement to their respective legal counsel, accountants, financial advisors, or spouses, or as may be compelled by court order, subpoena, or other legal process.

(Settlement Agreement ¶ 11.)

Employee rights under the FLSA have a "public-private character," which means that "the public, including current, former, or potential employees of a particular defendant, ha[ve] an interest in assuring that employee wages are fair." Li v. Family Garden II, Inc., No. 18-1325, 2019 WL 1296258, at *3 (E.D. Pa. Mar. 20, 2019). There is a strong presumption in favor of keeping settlement agreements in FLSA wage-settlement cases available to the public. See, e.g., Lyons, 2015 WL 4378514. Further, courts favor "truly limited, or narrowly drawn, confidentiality or non-disparagement clauses only where the clauses did not prevent plaintiffs from discussing the settlements with defendants' employees." Mabry, 2015 WL 5025810, at *3; see also Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 300583, at *3 (D.N.J. Feb. 1, 2012) (collecting cases).

Here, the confidentiality clause limits discussion of the parties' settlement terms to only

Plaintiff's "legal counsel, accountants, financial advisors, or spouses" or upon court order. (Settlement Agreement ¶ 11.) Importantly, the confidentiality clause does not permit Plaintiff to discuss the settlement terms with co-workers or other individuals with an interest in ensuring that employee wages are fair. Even though the parties filed their settlement agreement on the public docket, I find that the confidentiality clause is too restrictive and frustrates the purpose of the FLSA. As such, I decline to approve the confidentiality clause as drafted. I will, however, allow the parties to submit a revised confidentiality clause, addressing the concerns raised herein.

### 2. The Release Provision

I must also analyze whether the release provision in the settlement agreement frustrates the purpose of the FLSA. District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." Singleton v. First Student Mgmt. LLC, No. 13-1744, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); see also Bettger, 2015 WL 279754, at *8–9 (collecting cases). This is because "overly broad releases have no place in settlements of most FLSA claims." Bright v. Mental Health Resource Center, Inc., No. 10-427, 2012 WL 868804, at *4 (M.D. Fla. Mar. 12, 2012).

"The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible." Id. (citations omitted). Therefore, courts must closely examine FLSA settlements

containing "pervasive" release provisions that "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Brumley, 2012 WL 1019337, at *8.

Here, in relevant part, the release provision states,

> [Plaintiff] agrees that he shall irrevocably and unconditionally release, acquit and forever discharge Defendants . . . with respect to all claims, known and unknown to him. . . . including any wage and hour claims under state or federal law relating to his employment by or provision of services to Defendants including, without limitation, the failure to pay wages, back wages, overtime, minimum wages, interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under federal, state or local wage and hour laws, including, but not limited to the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law. [Plaintiff] agrees that he shall irrevocably and unconditionally release, acquit and forever discharge Defendants with respect to any claims under state or federal law relating to any matter of employment or the provision of services with, to or for Defendants, including any form of compensation or relief permitted under any federal, state or local laws, including, the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1991, or the Pennsylvania Human Relations Act, during the time that [Plaintiff] was employed by or otherwise performed services for Defendants.

(Settlement Agreement ¶ 3(a).)

The language releasing "all claims known and unknown to [Plaintiff]" including "any claims under state or federal law relating to any matter of employment or the provision of services with, to or for Defendants" is overly broad, and, therefore, raises concern. District courts in this Circuit and others have repeatedly excluded similarly broad general release provisions that extend beyond the claims related to the specific litigation as pervasive, and therefore, unreasonable. See, e.g., Howard v. Phila. Housing Auth., 197 F.Supp. 3d 773, 779 (E.D. Pa. 2016); See also Berger v. Bell-Mark Technologies Corp., No. 17-1839, 2019 WL 1922325, at *5 (M.D. Pa. Apr. 30, 2019).

The case of Sanders v. CJS Solutions Group, LLC is particularly instructive. In Sanders, the representative plaintiffs agreed:

> [G]enerally release and discharge [defendant] . . . finally, forever, and with prejudice, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses and issues of any kind or nature whatsoever, whether known or unknown, that Named Plaintiffs have or may have against [Defendant] that arose prior to the date on which they execute this [Settlement] Agreement.

Sanders, 2018 WL 620492, at *3 (internal quotation marks omitted). In analyzing this provision, the court reasoned that it could not approve FLSA settlements "containing an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." Id. at *4 (citations omitted). The court found this to be especially true where "releases [a]re not mutual and protect[] only the defendants." Id. (citations omitted).

The parties in Sanders later submitted a revised settlement agreement, addressing the deficiencies identified by the court. Sanders v. CJS Solutions Grp., LLC, No. 17-3809, 2018 WL 1116017, at *2 (S.D.N.Y Feb 28, 2018). The court ultimately accepted this revised release, because, although still non-mutual, it had been limited to waiving, "only those complaints that were or could have been asserted in this action." Id.

Here, the release language at issue bears a resemblance to the language rejected by the court in Sanders. The settlement agreement provides for releasing "any claims under state or federal law relating to any matter of employment or the provision of services with, to or for Defendants." (Settlement Agreement ¶ 3(a).) The agreement also purports to release "all claims" that are "unknown to [Plaintiff]." (Id.) The indeterminate nature of Plaintiff's release not only prevents me from evaluating the non-FLSA claims that he has waived, but also potentially provides Defendant with a windfall should some unknown claim later accrue. This makes the fairness determination difficult, if not impossible, and runs contrary to the history and policy of the FLSA. See Cruz v. JMC Holdings, Ltd., No. 16-9321, 2019 WL 4745284, at *7

12

(D.N.J. Sept. 30, 2019). Plaintiff fails to address these concerns in his unopposed motion for approval of settlement.

I cannot ignore the overwhelming disfavor of such broad release provisions. As such, I decline to approve Plaintiff's release provision as drafted because it frustrates the purpose of the FLSA. I will, however, also allow the parties to submit a revised release provision, addressing the concerns raised herein.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Feed and Costs is denied without prejudice.

An appropriate order follows.